UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOHN EDWARD PFALZER,

                Plaintiff,

v.                                  **DECISION AND ORDER**
                                            12-CV-659S

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,[1]

                Defendant.


1.      Plaintiff John Pfalzer challenges an Administrative Law Judge's ("ALJ") determination that he was not disabled within the meaning of the Social Security Act ("the Act").

2.      On August 20, 2008, Pfalzer filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and IX of the Act, alleging an inability to work as of August 1, 1999. (R. 151-59.)[2] His applications were denied and, at Pfalzer's request, a video hearing was held before Administrative Law Jennifer Whang on October 7, 2010. Pfalzer appeared with an attorney and testified. The ALJ considered the case *de novo* and, on November 4, 2010, issued a decision denying the applications for benefits. Pfalzer filed a request for review with the Appeals Council, which denied the request on May 18, 2012. He commenced this civil action on July 12, 2012, challenging the Commissioner of Social Security's ("Commissioner's") final decision.[3]

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. She is substituted for Michael J. Astrue as the Defendant in this action, under Rule 25(d) of the Federal Rules of Civil Procedure.

[2] Citations to the administrative record are designated as "R."

[3] The ALJ's May 26, 2011 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

1

3. On January 28, 2013, Pfalzer and the Commissioner each filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The motions were fully briefed on March 21, 2013, at which time this Court took the matter under advisement without oral argument. For the reasons set forth below, the Commissioner's motion is granted and Pfalzer's motion is denied.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other

words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. The Second Circuit summarized this five-step process as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. The claimant bears the burden of proof as to the first four steps, but the burden shifts to the Commissioner on the fifth and final step. See Bowen, 482 U.S. at 146

n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry, in turn, is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.      ALJ Whang made the following findings with regard to Pfalzer's claims: (1) Pfalzer had not engaged in substantial gainful activity since August 1, 1999 (R. 47); (2) his degenerative joint disease of the hip and chronic nerve pain due to neuropathic pain syndrome/nerve injury status post inguinal repair are severe impairments within the meaning of the Act (Id.); (3) these impairments did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 49); (4) Pfalzer retains the residual functional capacity ("RFC") to perform light work with additional specified limitations[4] (Id.); (5) he is unable to perform his past relevant work (R. 52); and (6) jobs exist in substantial number in the national economy that an individual of Pfalzer's age, education, past relevant experience, and RFC can perform (R. 53.) Ultimately, the ALJ concluded that Pfalzer was not under a disability as defined by the Act. (R. 54.)

10.     Pfalzer argues that reversal and remand are warranted because: (1) the ALJ erred in concluding that Pfalzer's depression was not a severe impairment, (2) her RFC assessment is not supported by substantial evidence, (3) her credibility assessment is not

---

[4] The ALJ determined Pfalzer would require a sit/stand option allowing him to alternate between sitting and standing at least every hour, he can only occasionally use ramps, climb stairs, stoop, kneel, crouch and crawl, should never climb ladders, ropes or scaffolds, and should avoid moving machinery and unprotected heights. (R. 49.)

supported by substantial evidence, and (4) the Commissioner did not meet his burden of proof at step five of the sequential process.

    11.    "A 'severe' impairment is one that significantly limits an individual's physical or mental ability to do basic work activities. Tryon v. Astrue, No. 10-CV-537, 2012 U.S. Dist. LEXIS 14486, at *5 (N.D.N.Y. Feb. 7, 2012) (citations omitted). Pfalzer has the burden of establishing severity. "The 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, itself, sufficient to deem a condition severe." McConnell v. Astrue, 03-CV-052, 2008 U.S. Dist. LEXIS 24638, at *6 (N.D.N.Y. Mar. 27, 2008) (citing Coleman v. Shalala, 895 F.Supp. 50, 53 (S.D.N.Y.1995)). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97-CV-5759, 1999 U.S. Dist. LEXIS 5621 (E.D.N.Y. March 19,1999) (quoting Social Security Ruling 85-28).

    As noted, ALJ Whang found, at step two, that Pfalzer's degenerative joint disease and chronic nerve pain were severe impairments. She concluded that three other medically-determinable conditions were not—high cholesterol levels, low testosterone levels, and depressive disorder. The first two were well-managed with medication, and the depressive disorder did not cause more that a minimal limitation on Pfalzer's ability to perform basic mental work activities. (R. 47-48.) Pfalzer challenges the latter conclusion, and contends the record supports a finding of that his depressive disorder is "severe."

    Pfalzer first argues the ALJ erroneously relied on the opinion of a non-examining state agency psychological consultant in reaching her conclusion. It is evident to this Court that is not the case. The ALJ acknowledged the standard set out in disability regulations

for evaluating mental disorders and applied the four specified factors to determine the degree of Pfalzer's depression-related limitations: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). Relying on Pfalzer's hearing testimony and the voluminous medical record, the ALJ found "no more than mild limitation" in his activities of daily living and his ability to maintain concentration persistence, or pace, "mild limitation" in social functioning, and no episodes of decompensation. For each factor, the ALJ identified relevant testimony and discussed the record evidence. Only at the conclusion of her assessment did the ALJ note that a non-examining consultant also had opined Pfalzer's depression was non-severe.

In a related argument, Pfalzer maintains the ALJ was required to consider the reports of treating and examining physicians who stated that his depression is a reaction to chronic pain (R. 764) and, in turn, that his pain perception—i.e., the difference between his subjective complaints and the objective findings—is likely enhanced due to his psychosocial and psychological issues (R. 403-04, 421). Pfalzer contends these opinions compel a step two finding of severe depression. Of the three opinions to which he refers, two discuss the impact of depression on his *neurological* symptoms and prognosis; they do not discuss his ability to perform *mental* work activities. (R. 373-411, 418-22.) The ALJ found the chronic nerve pain is a severe impairment. The third opinion is from examining consultative psychologist Thomas Ryan, Ph.D., who offered a diagnosis of adjustment disorder with depressed mood but went on to state Pfalzer "demonstrates no limitation in ability to follow and understand simple directions, perform simple tasks, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks and make adequate daily decisions." (R. 763.) In short, the opinion that does address

6

mental functioning supports the ALJ's conclusion.

This Court finds the determination that Pfalzer's depression is not severe is both legally sound and supported by substantial evidence.

12.     Pfalzer next maintains the ALJ's RFC is flawed because she did not follow the treating physician's rule and did not provide a function-by-function analysis in making her assessment.

Under the "treating physician's rule," the ALJ must give controlling weight to a treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2)[5]; *see also* Green-Younger v. Barnhart, 335 F.3d 99 (2d Cir. 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). Pfalzer contends the ALJ did not give "good reasons" for according Dr. Updike's opinion little weight. This assertion is simply incorrect. ALJ Whang expressly noted that there were multiple inconsistencies between the functional limitations Dr. Updike described and his own treatment notes, including identifying one limitation for which there is a complete absence of evidence.

Pfalzer urges that, having found an inconsistency, the ALJ should have recontacted Dr. Updike and requested clarification. The record evidence shows that requests were made to Dr. Updike for opinion clarification, and that he did not respond. (R. 793.) The ALJ had no obligation to repeatedly pursue clarification.

---

[5] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003). Effective March 26, 2012, the Commissioner amended §§ 404.1527 and 416.927. 77 FR 10651, 10656. Citations in this opinion will refer to the regulation(s) in effect when this claim was adjudicated.

13.    Pfalzer's also argues the RFC is flawed because ALJ Whang did not assess his work-related abilities on a function-by-function basis . Social Security Ruling 96-8p states that "[e]xertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling." 1996 SSR LEXIS 5, at *2. The ruling further provides that, prior to assessing a claimant's residual functional capacity, "[e]ach function must be considered separately." *Id*.

The Second Circuit has confirmed, however, that an ALJ need not separately discuss a claimant's ability to perform each exertional function, so long as the RFC determination is set forth with sufficient specificity to permit the court to decide whether it is supported by substantial evidence. Campbell v. Astrue, 465 Fed. Appx. 4, 6 (2d Cir. 2012) (summary order) (*citing* Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)); *see also*, Murphy v. Astrue, No. 12-CV-6271MAT, 2013 U.S. Dist. LEXIS 51088, at *16-18 (W.D.N.Y. Apr. 9, 2013); Lloyd v. Astrue, No. 12-CV-122S, 2013 U.S. Dist. LEXIS 25794, at *10 (W.D.N.Y. Feb. 23, 2013) (failure of ALJ to conduct function-by-function assessment is not *ipso facto* ground for remand).

Here, the ALJ noted that Pfalzer had been plagued with pain in the inguinal region since 1995, about one month after hernia repair surgery. She also found there was no significant change in the quality and nature of Pfalzer's pain throughout the alleged period of disability. Pfalzer does not challenge these findings.

As the ALJ observed, Pfalzer returned to work as a chemist after his 1995 surgery and continued to work until he was laid off, on or about August 1, 1999. His chemist position, as customarily performed, is classified as light work. (R. 33.) The ALJ went on to

consider Pfalzer's testimony regarding his daily activities, as well as the notes and opinions of treating and examining physicians from 1999 through 2010. Because the Court finds RFC determination sufficiently specific to allow a determination of whether it is supported by substantial evidence, no function-by-function analysis is necessary.

Pfalzer testified he lives independently, does laundry, shops and cooks for himself, attends to his personal care, and travels by bus. (R. 50.) In 2000, examining physician Dr. Rubinstein, stated that he did not expect to see significant change in Pfalzer's condition, and found him "employable especially at sedentary types of activities and jobs . . . that would not require him to be on his feet for more than one to two hours at a time or that involve straining." (R. 346.)  In 2001, Dr. Brigham, an independent medical examiner, opined that Pfalzer "would have at least a light full time work capacity." (R. 409.) Treating physician Updike noted, in 2006, that Pfalzer was doing well with nice functional status and stable pain control, and, in 2007, that he had been stable with "excellent functional status and no aberrancy." (R. 594, 583.) In 2010, Dr. Updike noted no significant changes in Pfalzer's pain, which was "essentially manageable" and that "[h]e continues to consider getting back into his previous line of work." (R. 821-22.) Dr. Updike did not identify any barriers to Pfalzer doing so. This and other record evidence is adequate to support the ALJ's conclusion that Pfalzer has the capacity to perform light work with a sit/stand option allowing him to alternate positions at least every hour, but with no climbing, and only occasional stooping, kneeling, crouching, crawling and use of ramps or stairs.

14.     Next, Pfalzer argues that the ALJ's credibility finding is not supported by substantial evidence. When considering a claimant's symptoms, an ALJ must follow a two-step process. First, he must determine if there is an underlying medically determinable

9

physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms. SSR 96-7p, 1996 SSR LEXIS 4, at *1-2. Second, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which they limit the claimant's functioning. *Id*. at *2. This requires the ALJ to consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96-7p, 1996 SSR LEXIS 4, at *2-3. "The determination . . . must contain specific reasons for the finding on credibility . . . and must be sufficiently specific to make clear . . . the weight the adjudicator gave to the individual's statements and the reasons for that weight. Id. at *3-4.

Here, the ALJ found Pfalzer's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but his statements concerning their intensity, persistence and limiting effects were not entirely credible. Among other things, the ALJ noted Pfalzer performed light work for approximately four years after his initial surgery, and there have been no significant objective or subjective changes in the quality and nature of his pain since then. She further concluded that Pfalzer's statements about his daily activities were inconsistent with statements suggesting a higher degree of limitation. In short, the ALJ applied the requisite two-step process and did not, as Pfalzer maintains, base her credibility determination solely on her own RFC finding.

"The ALJ alone decides issues of credibility and this Court must give great deference to those decisions, as the ALJ was able to observe the witness's testimony and demeanor at the hearing." Lloyd, 2013 U.S. Dist. LEXIS 25794, at *12 (*citing* Gernavage

v. Shalala, 882 F. Supp. 1413, 1419 n.6 (S.D.N.Y. 1995); Serra v. Sullivan, 762 F. Supp. 1030, 1034 (W.D.N.Y. 1991). The Court finds no basis to question the sufficiency of the ALJ's finding here; it is legally sound and supported by substantial evidence.

15.   Finally, Pfalzer contends the Commissioner did not meet his burden of proof at step five of the sequential evaluation because the ALJ incorporated an erroneous RFC determination into the hypothetical he presented to the vocational expert. Because this Court has rejected Pfalzer's claims of error with regard to the RFC assessment, it also finds the ALJ did not err when he based a hypothetical question on that assessment. Salmini v. Comm'r of Soc. Sec., 371 Fed. Appx. 109, 114 (2d cir. 2010) (*citing* Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir. 1983)).

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 8) is GRANTED;

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 7) is DENIED;

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated: October 16, 2013
      Buffalo, New York

                                    /s/William M. Skretny
                                    WILLIAM M. SKRETNY
                                        Chief Judge
                                  United States District Court